**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*Plaintiff,*<br>v.<br><br>**47 PIT BULL-TYPE DOGS,**<br><br>*Defendants.* | Civil Action No.: 26-cv-00370 |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The Plaintiff, the United States of America, brings this Complaint and alleges as follows, in accordance with Supplemental Rule G(2), of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. This is a civil action *in rem* brought to enforce 7 U.S.C. § 2156(e) for the forfeiture of forty-seven pit bull-type dogs that were involved in a violation of the animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156.

**DEFENDANTS *IN REM***

2. The Defendants *in rem* ("Dogs") seized at 172 Gillis Pugh Road, Lower Peach Tree, Alabama are as follows:[1]

   a. USM-2166: a tan, female pit bull-type dog;

   b. USM-2167: a tan, female pit bull-type dog;

   c. USM-2168: an underweight, tan, female pit bull-type dog;

   d. USM-2169: an underweight, tan, female pit bull type-dog;

[1] The United States Marshals Service assigns each dog an identification number, such as USM-XXXX.

e. USM-2170: an underweight, red, female pit bull-type dog;

f. USM-2171: a brindle, male pit bull-type dog;

g. USM-2172: an underweight, tan, female pit bull-type dog;

h. USM-2173: an underweight, white and black, male pit bull-type dog;

i. USM-2174: a brown and white, male pit bull-type dog;

j. USM-2175: a red, female pit bull-type dog;

k. USM-2176: an underweight, black, female pit bull-type dog;

l. USM-2177: a brindle, female pit bull-type dog;

m. USM-2178: an underweight, red, male pit bull-type dog;

n. USM-2179: an underweight, red, female pit bull-type dog;

o. USM-2180: an underweight, black, female pit bull-type dog;

p. USM-2181: a black, female pit bull-type dog;

q. USM-2182: a tan, male pit bull-type dog;

r. USM-2183: an underweight, brindle, male pit bull-type dog;

s. USM-2184: a tan, male pit bull-type dog;

t. USM-2185: an underweight, light tan, male pit bull-type dog;

u. USM-2186: a red, female pit bull-type dog;

v. USM-2187: a black, female pit bull-type dog;

w. USM-2188: an underweight, tan, female pit bull-type dog;

x. USM-2189: an underweight, white, male pit bull-type dog;

y. USM-2190: an underweight, tan, male pit bull-type dog;

z. USM-2191: an underweight, tan, male pit bull-type dog;

aa. USM-2192: an underweight, brindle, female pit bull-type dog;

bb. USM-2193: an underweight, brindle and white, male pit bull-type dog;

cc. USM-2194: a black, female pit bull-type dog;

dd. USM-2195: a black, female pit bull-type dog;

ee. USM-2196: an underweight, tan, female pit bull-type dog;

ff. USM-2197: a light tan, male pit bull-type dog;

gg. USM-2198: a tan, male pit bull-type dog;[2]

hh. USM-2199: an underweight, tan, female pit bull-type dog;

ii. USM-2200: a black, female pit bull-type dog;

jj. USM-2201: an underweight, tan, male pit bull-type dog;

kk. USM-2202: an underweight, brindle, male pit bull-type dog;

ll. USM-2203: an underweight, black, male pit bull-type dog;

mm. USM-2204: an underweight, red, female pit bull-type dog;

nn. USM-2205: a black with white paws, female pit bull-type dog;

oo. USM-2206: an underweight, tan, female pit bull-type dog;

pp. USM-2207: an underweight, red, male pit bull-type dog;

qq. USM-2208: a black, male pit bull-type dog;

rr. USM-2209: a one-eyed, tan, female pit bull-type dog;

ss. USM-2210: a black, male pit bull-type dog;

tt. USM-2211: a tan, female pit bull-type dog; and

uu. USM-2212: a red, female pit bull-type dog.

[2] USM-2198 arrived at the medical facility in poor health (lethargic, with diarrhea, vomiting, pale gums, and a swollen, pus-filled neck). He would not eat or drink and passed away within hours of arriving at the facility. After further examination, the veterinarian determined that the dog suffered from clinically significant anemia due to hookworms.

3. The Dogs were seized on or about July 3, 2026, from the yards of the above-referenced residence located in Lower Peach Tree, Alabama, pursuant to a federal search warrant.

4. The Dogs are currently in the custody of the U.S. Marshals Service and being cared for by a U.S. Marshals Service contractor.

5. The forty-seven Dogs are subject to forfeiture to the United States pursuant to 7 U.S.C. § 2156(e), as animals involved in a violation of the federal animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156.

6. Because this Complaint is being filed for the purpose of establishing grounds for forfeiture and providing notice to interested persons, it does not include all of the information known by the Government in connection with the investigation underlying the claims for forfeiture set forth herein.

## KNOWN POTENTIAL CLAIMANTS

7. The persons known to the United States who may claim an interest in the Dogs are Antonia Rico Rogers, Jr. The United States will provide notice of this action to this individual.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1345 and 1355. Upon the filing of this Complaint, Plaintiff request that the Court issue an arrest warrant *in Rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

9. Venue is proper pursuant to 28 U.S.C. § 1355(b) because acts and omissions giving rise to the forfeiture took place in the Southern District of Alabama.

**STATUTORY BASIS FOR FORFEITURE**

10. The Animal Welfare Act, 7 U.S.C. § 2131, *et seq*., defines "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(f)(1). It is illegal to sponsor or exhibit an animal in an animal fighting venture. 7 U.S.C. § 2156(a)(1). It is also illegal to sell, buy, possess, train, transport, deliver, or receive an animal intended for use in an animal fighting venture. 7 U.S.C. § 2156(b).

11. The Animal Welfare Act provides that "[a] warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate judge within the district wherein the animal sought is located." 7 U.S.C. § 2156(e). Animals "seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this subsection." *Id.* In addition, "[n]ecessary care including veterinary treatment shall be provided while the animals are so held in custody." *Id.*

12. The statute also contemplates forfeiture of seized live animals. Specifically,

> [a]ny animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct.

*Id.* The costs incurred in caring for animals seized and forfeited under this section "shall be recoverable from the owner of the animals (1) if he appears in such forfeiture

proceeding, or (2) in a separate civil action brought in the jurisdiction in which the owner is found, resides, or transacts business." *Id.*

13. As explained below, the Dogs are animals "involved in [] violation[s]" of 7 U.S.C. § 2156 and are therefore subject to forfeiture to the United States of America pursuant to 7 U.S.C. § 2156(e).

**BACKGROUND ON DOG FIGHTING**

14. Dog fighting is a violent contest in which two dogs that are bred and conditioned for fighting are released by their owners or handlers in a controlled environment to attack each other and fight for purposes of entertainment or gambling. Fights usually end when one dog withdraws, when a handler "picks up" his dog and forfeits the match, or when one or both dogs die.

15. In the United States, dog fighting ventures usually involve pit bull-type dogs. This is because dog fighters prefer their short coat, compact muscular build, and the aggressive temperament that some exhibit toward other dogs.

16. Dog fighters select the strongest, most capable fighting dogs and selectively breed, sell, and fight only those dogs that display particular traits.

17. Some of these traits are: (1) "gameness" or aggressiveness and propensity to fight other dogs; (2) a willingness to continue fighting another dog despite traumatic and/or mortal injury; and (3) cardiovascular endurance to continue fighting for long periods of time and through fatigue and injury.

18. Dog fighters fight dogs with a goal of obtaining "Champion" or "Grand Champion" status for their dogs, which is achieved by winning three or five fights, respectively.

19. Dog fighters maintain contact with other dog fighters around the country and can generate substantial income from gambling on dog fights and from the sale and breeding of fighting animals.

20. It is a common practice for those involved in training and exhibiting fighting dogs to possess several dogs at one time. This practice is followed for several reasons. First, dog fighters maintain a stock of dogs at different weights and both sexes because in dog fights, dogs are matched against other dogs to within a pound of the same weight against dogs of the same sex. Maintaining a stock of several dogs thus increases the odds of owning a dog whose weight meets the requirements for a match being solicited by an opponent.

21. Dog fighters also maintain multiple dogs in order to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dog fighting bloodline. Possessing multiple dogs increases the prospects of owning a dog who will become a Champion or Grand Champion. Dog fighters also routinely test and evaluate their dogs to determine those that exhibit aggressive behavior, including against their own dogs.

22. Further, dog fighters must possess an inventory of dogs because dogs often die or are badly injured during fights. Dogs that lose fights or fail to show "gameness" are often killed. It is not uncommon for dogs that lose matches to be killed in cruel, torturous, and inhumane ways as punishment.

23. Once a dog fighter locates an opponent and agrees upon terms, the match is "hooked," or set up. The dog then undergoes a conditioning process dog handlers refer to as a "keep." A "keep" is typically conducted for six to eight weeks before the scheduled match and involves a training program that may include running and exercising the dogs away from

public view, the use of devices such as "spring poles" and "flirt poles" to build jaw strength and increase aggression, and the administration of drugs, vitamins, and other medicine.

24. Dog fighters typically do not start setting up matches for a dog until the dog reaches at least eighteen months to two years of age. Until then, dog fighters may test the dog out by "rolling" it or having the dog participate in short fights to assess the dog's demeanor. Thus, it is common for dog fighters to possess multiple young pit bull-type dogs who are in the process of being trained to fight.

25. One sign of a dog fighting venture is the presence of pit bull-type dogs on heavy or excessive chains, or housed individually in pens or crates. Persons engaged in dog fighting take steps to restrain or isolate dogs used for fighting from one another to prevent them from fighting at unintended times. They may also keep younger dogs they intend to use for fighting out of reach of other dogs to discourage normal socialization. Heavy chains are used to develop neck strength in dogs used for fighting.

26. It is common for dog fighters to possess dog fighting paraphernalia used to exercise, train, restrain, and strengthen or condition their dogs, including:

    a. Weighted collars and chains;

    b. "Spring poles"— ropes that dangle animal hides or "lures" that, when gripped by a dog's mouth, result in the dog being suspended partly or entirely off the ground. Spring poles are commonly used by dog fighters to strengthen and condition a dog's jaw and neck muscles to achieve a better "bite";

    c. "Break sticks"—sticks of wood, plastic, fiberglass, resin, or other material that are used to pry open the jaws of dogs during a dog fight; and

d. Treadmills, slat mills, and jenny mills—types of running mills that have been modified to attach a dog via harness so as to require the dog to run for extended periods of time, thus increasing a dog's stamina and cardiovascular endurance.

27. Dog fighters often attempt to mend the injuries of their dogs rather than seek veterinary attention, which may raise suspicion regarding the cause of injuries. Thus, it is common to find veterinary supplies, including animal medication or supplements (which don't require a prescription), where dogs involved in dog fighting are being kept.

28. Dogs who have been fought may have scars, puncture wounds, swollen faces, or mangled ears. Scars from organized dog fights are commonly found on the face and front legs, as well as on hind ends and thighs.

## BASIS FOR FORFEITURE

29. At all times relevant to this Complaint, Antonio Rogers was a resident of 172 Gillis Pugh Road, Lower Peach Tree, Alabama ("the Residence").

30. On January 9, 2023, law enforcement observed a large number of dogs on the property while executing a search warrant of the Residence. The observed dogs were chained outside and many had barrels near them that law enforcement believed were being used as dog shelters. Law enforcement also observed veterinary medicine, weighted chains, a jenny mill, and break sticks at the Residence.

31. Following the search warrant execution in 2023, a review of Mr. Rogers's phone revealed multiple messages setting up dog fights and at least one video of a dog fight.

32. On June 24, 2026, a federal grand jury returned an indictment against Mr. Rogers, alleging that on January 9, 2023, he knowingly possessed at least five dogs for the purpose of having them participate in an animal fighting venture, in violation of 7 U.S.C. § 21565(b).

33. An arrest warrant issued, which law enforcement executed on July 2, 2026, at the Residence. While executing the arrest warrant, law enforcement observed approximately 43 pitbull-type dogs on the property, secured by heavy chains that kept them out of reach from one another. Law enforcement described at least one of those 43 dogs as being emaciated and at least one having scars they believed to be consistent with dog fighting. Law enforcement also observed a jenny mill and veterinary medicine designed to treat injuries and to build muscle.

34. That same day, law enforcement also seized Mr. Rodgers's cell phones pursuant to a state residential search warrant. A forensic electronic device examination later revealed photos, videos, text messages, and social media messages between Mr. Rodgers and others that law enforcement identified as being connected to dog fighting. This includes text messages from March of 2026 seeking to set up dog fights, and messages throughout 2021, 2022, 2023, 2024, and 2025 discussing dogs and dog fighting. There were also images of dogs that appeared to be in training.

**A. Search Warrant Execution**

35. On July 3, 2026, Special Agents of the FBI, with the assistance of other federal and local law enforcement, returned to the Residence to execute a federal search and seizure warrant.

36. Upon execution of the above-mentioned property search warrant, law enforcement found evidence consistent with participation in dog fighting activities.

37. Upon information and belief, Mr. Rogers owned the Dogs for the purpose of participation in an animal fighting venture.

38. During the execution of the search warrant, agents observed that several of the Dogs exhibited scarring, wounds, sores, or other injuries:

a. USM-2167 (including scarring on the head, face, front legs, tail, and underbelly, and a wound on the back right paw);



b. USM-2168 (including scarring on the back left side of the body and tail, a missing part of the left ear, and a bleeding wound on the tip of the tail);

c. USM-2169 (including scarring on the head, front legs and paws, tail, and back right leg)

d. USM-2170 (including an open wound on the front right side of the body and a bleeding wound on the tip of the tail);

e. USM-2172 (including a scabbing wound on the left side of the neck and on the left front leg, and scarring on all legs and back left side of the body);

f. USM-2173 (including scarring on the left side of the body and near the right shoulder);

g. USM-2174 (including scarring on the head, ears, and front right leg);

h. USM-2175 (including scarring on the face, head, neck, all legs, back, tail, and back right paw);

i. USM-2176 (including scarring on the face, head, all legs, both shoulders, tail, and back, as well as bleeding wounds on the tip of the tail, back right leg, and face, and a missing nail on the front left paw);



j. USM-2178 (including a wound on the left ear, a broken nail on the front left paw, and scarring on the inside of the front right leg);

k. USM-2180 (including scarring on the head, face, ears, both front legs, back right leg, and tail,);

l. USM-2183 (including fresh tears on both ears, scarring on the back, the back legs, and sores on the rump);



m. USM-2184 (including scarring on front left leg and shoulder, rump and back left leg);

n. USM-2186 (including scarring on the back left leg);

o. USM-2188 (including scarring on the face, back legs and the back, as well as a bleeding wound on the tail);

p. USM-2189 (including scarring on the front left leg, back left leg, and tail, as well as scarring and sores on the front right leg and back right leg);

q. USM-2190 (including scarring on the head, face, front legs, neck, and back, and an open wound on the back);



r. USM-2191 (including scarring on the front left leg and face);

s. USM-2193 (including a scarring on the left side of the body, the back, and back right leg, with missing parts of the left ear and the tail);

t. USM-2194 (including scarring on the back right leg, the right ear, the back left leg, and the tail);

u. USM-2196 (including a nick out of the left ear, as well as scarring on the right ear, both front legs, back, tail, rump, and the left side of the body);

v. USM-2198 (including scarring on the back, front legs, and back left leg);

w. USM-2200 (including scarring on the face, head, back left leg, and rump);

x. USM-2201 (including scarring on the back, tail, and back legs);

y. USM-2203 (including scarring on both front legs);

z. USM-2205 (including scarring on the head, back, left side of the body, back right leg, and tail);

aa. USM-2207 (including scarring on the tail, the left side of the body, and both back legs);

bb. USM-2209 (including a missing eye and scarring on the head, face, ears, back right leg, and both front legs and tail);

cc. USM-2212 (including scarring on the ears, head, and front right leg).

39. It is not uncommon for dogs possessed for the purpose of participation in a dog fighting venture to lack scarring and wounds indicative of dog fighting activities. A dog may lack scarring for a variety of reasons, including its fighting prowess, because it has yet to be fought (either because it is too young or because its handler had yet to find an appropriate match for the dog's sex and weight), or because it is being used exclusively for breeding purposes.

40. One Dog, USM-2198, has since passed away. He had scarring on his back, front legs, and back left leg.

41. Most of the seized Dogs tested positive for hookworms (USM-2166, USM-2167, USM-2168, USM-2169, USM-2170, USM-2171, USM-2173, USM-2174, USM-2175, USM-2176, USM-2177, USM-2178, USM-2179, USM-2180, USM-2181, USM-2182, USM-2183, USM-2184, USM-2185, USM-2186, USM-2187, USM-2188, USM-2189, USM-2190, USM-2191, USM-2193, USM-2194, USM-2195, USM-2196, USM-2197, USM-2198, USM-2199, USM-2200, USM-2201, USM-2202, USM-2203, USM-2204, USM-2205, USM-2206, USM-2207, USM-2208, USM-2209, USM-2210, USM-2211, USM-2212).

42. Three Dogs tested positive for whipworms (USM-2193, USM-2195, USM-2196).

43. One dog tested positive for roundworms (USM-2181).

44. Several Dogs tested positive for heartworms (USM-2170, USM-2182, USM-2202, USM-2210).

45. Many Dogs tested positive for babesia, a tickborne parasitic infection that spreads through bite wounds and is common among fighting dogs (USM-2167, USM-2168, USM-2172, USM-2176, USM-2178, USM-2180, USM-2183, USM-2190, USM-2191, USM-2201, USM-2205, USM-2206, USM-2207, USM-2212).

46. Some Dogs tested positive for other tickborne parasitic or bacterial infections, including anaplasmosis (USM-2170, USM-2172, USM-2176, USM-2178, USM-2180, USM-2190, USM-2191, USM-2192, USM-2193, USM-2201, USM-2206, USM-2212), lyme (USM-2201, USM-2207), and ehrlichia (USM-2191).

47. Three dogs tested positive for cystoisospora, the parasite that causes coccidiosis (USM-2183, USM-2191, USM-2198).

48. Many of the Dogs were treated for severe flea infestations (USM-2166, USM-2167, USM-2168, USM-2169, USM-2170, USM-2171, USM-2172, USM-2173, USM-2174, USM-2175, USM-2176, USM-2179, USM-2180, USM-2182, USM-2183, USM-2184, USM-2185, USM-2186, USM-2187, USM-2188, USM-2189, USM-2190, USM-2192, USM-2194, USM-2196, USM-2197; USM-2199, USM-2201, USM-2202, USM-2203, USM-2204, USM-2206, USM-2207, USM-2209, USM-2211, USM-2212).

49. Consistent with dogs possessed and/or trained for participation in an animal fighting venture, the Dogs were found restrained or housed separately and kept out of reach of one another.

50. Most of the Dogs were found wearing thick collars attached to a heavy chain that was staked into the ground. The immediate area accessible to these Dogs consisted of a dirt circle with makeshift shelter in the form of a plastic barrel, although some barrels stood upright, leaving those Dogs (USM-2173, USM-2201, USM-2202) with no shelter from the elements. The immediate area surrounding USM-2173 largely consisted of standing water and mud. Two Dogs (USM-2192, USM-2193) were confined in individual whelping pens.

51. No Dog appeared to have access to food. Water available appeared dirty and unsafe to drink.

52. No Dog appeared spayed or neutered, which is common among dogs involved in an animal fighting operation.

53. In sum, the condition in which the Dogs were found was not consistent with that of pet dogs of a comparable age.

54. Additionally, a number of items commonly associated with an illegal dog fighting operation were observed and/or seized from the Residence. For example:

    a. Break sticks, which dog fighters use to force a dog's bite onto another dog's body open, specifically at the termination of a fight or while training; and

    b. A bloodied carpet from a dog pit.

55. Based on the information and allegations set forth herein, there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendants *in rem* constitute, or are traceable to, animals involved in violations of 7 U.S.C. § 2156 and are therefore subject to forfeiture under the provisions of 7 U.S.C. § 2156(e).

**WHEREFORE,** the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the Defendants *in rem*; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* be forfeited to the United States of America for disposition according to law; that the Court enter a judgment for costs associated with the care of the Defendants *in rem* pursuant to 7 U.S.C. § 2156(e) should any interested party file a claim for the Defendants *in rem*; and that the United States of America be granted such other relief as this Court may deem just and proper.

Respectfully submitted on this 14th day of September, 2026.

SEAN P. COSTELLO
United States Attorney

By: */s/ Kacey Chappelear*
Kacey Chappelear
Assistant United States Attorney
11 N. Water St., Suite 30100
Mobile, AL 36602
Kacey.chappelear@usdoj.gov

**VERIFICATION**

I, Eric Lawson, hereby verify and declare under penalty of perjury, that I am a Special Agent with the Federal Bureau of Investigations, and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, including members of the United States Marshals Service. The Verified Complaint does not contain each and every fact that I have learned during the course of this investigation, but only those necessary to support the civil process against the Defendant Properties and the initiation of this civil forfeiture action.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2026.

Eric Lawson

Eric Lawson
Special Agent
Federal Bureau of Investigation